DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant, ALEXANDER SMIRNOV

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
* * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 2:24-CR-00091-ODW |
| v. | ) | |
| | ) | |
| ALEXANDER SMIRNOV, | ) | DATE OF HEARING: FEB. 20, 2024 |
| | ) | TIME OF HEARING: 3:00pm |
| Defendant, | ) | |
| _____ | ) | |

### DEFENDANT'S MOTION FOR PRETRIAL RELEASE

COMES NOW, Defendant, ALEXANDER SMIRNOV (hereinafter "Mr. Smirnov"), by and through his attorneys, DAVID Z. CHESNOFF, ESQ., and RICHARD A. SCHONFELD, ESQ., of the law firm of CHESNOFF & SCHONFELD and hereby move this Honorable Court for pretrial release in the instant case.

///

1

This Motion for Pretrial Release is made and based upon the attached Memorandum of Points and Authorities, the argument of counsel, and any other such evidence as may be presented at the time of hearing.

Dated this 19th day of February, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

_____/s/_____ David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702)384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant ALEXANDER SMIRNOV

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.      Proposed Conditions of Release:**

At the outset, Mr. Smirnov notes that he is an American citizen, that the Government has possession of his United States passport, that the undersigned counsel has possession of his Israeli passport and can surrender said passport to United States Pretrial Services, that he is a resident of Las Vegas, that before moving to Las Vegas he was a long time resident of the State of California, and that he has no criminal history of any sort.

Given that, Mr. Smirnov respectfully submits that the following conditions of pretrial release will provide ample, statutorily sufficient assurances to the Court that he is neither a risk of flight nor a danger to the community:[1]

- A personal recognizance signature bond;

- Supervision with the United States Pretrial Services' office in both the District of Nevada (where he is a resident) and the Central District of California (where the instant case is pending), to include electronic monitoring, maintaining his current residence, and no travel except as ordered to appear in the Central District of California;

- Surrender of his Israeli passport (the Government already has possession of his United States passport);

---

[1] Critically, the Pretrial Services Office for the District of Nevada has recommended Mr. Smirnov's pretrial release, correctly recognizing that conditions can indeed be fashioned regarding the factor of alleged flight.

3

- Compliance with any other conditions, orders or admonishments imposed by this Court, by the District Court in the Central District of California, or by any Pretrial Services Officer of either Court.

**B.   Procedural History:**

Mr. Smirnov was arrested on or about February 14, 2024, in Las Vegas, Nevada. The two-count Indictment filed in the Central District of California charges Mr. Smirnov with : 1) Making False Statements to a Government Agent, in violation of 18 U.S.C. § 1001; and 2) Falsification of Records in a Federal Investigation, in violation of 18 U.S.C. § 1519.

As alleged in the Indictment, Mr. Smirnov served as a confidential human source ("CHS") for the FBI for several preceding years. Virtually all of the allegations recited in Count One, however, occurred in 2020 (*see* Ind. at 34, ¶57) and the alleged falsifications pertain to alleged acts taking place between 2015 and 2017. *See id*. at 34-35. Similarly, the alleged falsifications charged in Count Two pertain to alleged acts that took place in June 2020.

The fact that the Government knew about Mr. Smirnov's alleged conduct for years – yet took no steps to end his cooperation, seize his passports, or prosecute him for *anything* – should be kept firmly in mind when (as expected) the Government reverses course in this bail proceeding and suddenly protests that Mr. Smirnov now presents an "extreme flight risk" who must be detained pending his initial appearance in the Central District of California.

Any bail assertion that Mr. Smirnov suddenly presents an unmanageable "flight risk" should, therefore, be considered in light of the Government's prior, nonchalant assessment of that very same risk.

It should further be noted that the United States Sentencing Guidelines calculation for the offenses with which Mr. Smirnov is charged include a base offense level of 14 which results in a sentencing range of 15-21 months if convicted at trial.  *See* U.S.S.G. 2J1.2[2].

**C.   Mr. Smirnov's Background:**

Mr. Smirnov is 43 years old, has no prior criminal history, has been in a relationship with his significant other, Diana Lavrenyuk ("Diana"), for decades, resides with Diana in the home that she owns in Las Vegas, has resided in Las Vegas for two years, has a Nevada Driver's License, and resided in California for the 16 years prior to moving to Las Vegas.  Mr. Smirnov clearly has a stable residential history.

United State Pretrial Service was able to verify Mr. Smirnov's relationship status, residential history, and the fact that he can return to his current residence if released from custody.  Further, Mr. Smirnov has a long term stable employment history.

Mr. Smirnov also has significant ties to the United States with familial relationships. Diana's son (who has been a part of Mr. Smirnov's life for decades) resides in  Washington D.C. along with his wife and has a good relationship with Mr. Smirnov. Additionally, Mr. Smirnov's cousin Linor Shefer resides in Florida and it is anticipated that she will travel to Las Vegas for his Court appearance on February 20, 2024[3].  Mr. Smirnov and Ms. Shefer have a great relationship.

---

[2] In anticipation of the Government asserting that every conceivable guideline enhancement applies, which they do not, the highest guideline level that the Government could seek is a level 19 which results in a sentencing range of 30-37 months.

[3] Counsel understands that additional family members/friends will be traveling to Las Vegas to support Mr. Smirnov in Court.

Mr. Smirnov suffers from significant medical issues related to his eyes and his treatment providers are in Las Vegas.  Mr. Smirnov has had seven surgeries in the last year, is required to take prescription medication daily, and requires ongoing care.

 Finally, it should be note that Mr. Smirnov has no history of drug or alcohol abuse and has no history of mental illness.  Smirnov's personal history supports release on conditions to be fashioned by this Honorable Court.

**D.      Statement of the Law:**

As the Supreme Court stated in *United States v. Salerno*, 481 U.S. 739, 107 S. Ct. 2095 (1987), in the United States, liberty is the norm, and detention is the carefully limited exception. The Court found that the Bail Reform Act of 1984 operates only on individuals who have been arrested for particularly serious offenses, and carefully delineates the narrow circumstances under which detention is permitted.

The Bail Reform Act of 1984 does allow a court to detain a defendant if no release conditions "will reasonably assure the appearance of the person and the safety of any other person in the community." But it is only under those rare circumstances where no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community, that a court may reasonably (not to mention, constitutionally) order the pretrial detention of a never-convicted, presumptively innocent defendant like Mr. Smirnov.

These principles were reinforced in *United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991), where the Ninth Circuit stated that the Bail Reform Act required release of persons under the least restrictive condition or combination of conditions that will reasonably assure appearance of the person and the safety of community. *See Gebro*, 948 F.2d at 1121. "Only in rare circumstances should release be denied, and doubts regarding the propriety of release should

6

be resolved in the defendant's favor." *Id.* (citing *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985)). Finally, "[o]n a motion for pretrial detention, the government bears the burden of showing [1] by a preponderance of the evidence that the defendant poses a flight risk, and [2] by clear and convincing evidence that the defendant poses a danger to the community." *Gebro*, 948 F.2d at 1121.

Citing 18 U.S.C. § 3142(g), the *Motamedi* Court stated: "The court must take into account available information concerning the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, record concerning appearance at court proceedings, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Motamedi*, 767 F.2d at 1407.

As shown below, these factors – coupled with the Pretrial Service Office's recommendation of pretrial release for Mr. Smirnov – militate overwhelmingly in favor of release in this case. This Court should thus release Mr. Smirnov on the recommended conditions and order him to appear in California on the date and time set for his initial appearance.

**E.    The *Motamedi* Factors Militate Overwhelmingly In Favor Of Release: Nature and seriousness of the offense charged.**

As stated above, Mr. Smirnov is charged under 18 U.S.C. § 1001 and 18 U.S.C. § 1519, both of which accuse him of making false statements in connection the current president's (and, particularly, the current president's son's) connection to a business deal with a company based in the Ukraine. These allegations are makeweight and politically-motivated; they do not involve espionage or theft and are thus not "serious."

**Weight of evidence against defendant.**

The Ninth Circuit has held that the "weight of the evidence" is the least important factor to be considered during the pretrial detention hearing. *See, e.g., Motamedi*, 767 F.2d at 1408. This guards against the possibility of making a "preliminary determination of guilt" that then leads to punishment in the form of a refusal to grant release. *Id.* "The [ ] factor may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Id.*; *see also United States. v. Armstrong*, 2010 WL 5102203 (D. Ariz. 2010) (granting pretrial release to defendant charged with two separate armed bank robberies while recognizing that the evidence against the defendant was strong because bank surveillance photos show her committing the robberies and because she admitted her participation.).

While it is not clear what the government's evidence consists of at this preliminary stage, it is respectfully submitted that when considered in conjunction with the other factors outlined here, the balance weighs in favor of release.

**Defendant's character, physical and mental condition.**

Mr. Smirnov has an exemplary character and is in good mental health. Mr. Smirnov has ongoing medical issues related to his eyes and will need continuing care.

**Defendant's family and community ties.**

Mr. Smirnov has lived in Las Vegas for two years, lived in California for the sixteen years prior to moving to Las Vegas, has relatives that live in the United States, and has his long term significant other that he resides with in Las Vegas. He thus has strong ties to the community and has the strong support of family and friends.

**Defendant's past conduct, history relating to drug and alcohol abuse, criminal history.**

Mr. Smirnov has no criminal history and there is no indication of any drug or alcohol abuse whatsoever.

**The nature and seriousness of danger to any person or community that would be posed by defendant's release.**

Mr. Smirnov is 43 years old and has no criminal history.  Any concern that Mr. Smirnov is a danger while on release can be adequately addressed through the imposition of certain conditions including electronic monitoring, maintaining his residence, travel restrictions, and any other condition the Court deems necessary.

**Additional, Critical Factors Unique to This Case.**

As this motion is being written, Mr. Smirnov is detained in Pahrump, Nevada pending his hearing on February 20, 2024, in the District of Nevada. It took the undersigned several hours on February 16, 2024 (not to mention dozens of phone calls), to secure even a brief phone call with Mr. Smirnov – at which the matter of legal representation, and nothing else, was discussed.

Moreover – and particularly relevant to the issue of pretrial release – a representative from the facility where Mr. Smirnov is being held advised counsel: 1) that Mr. Smirnov is in protective custody; and 2) that, given this restrictive classification, the entire facility needed to be "frozen" just so Mr. Smirnov could take this brief, non-substantive phone call.

Given the foregoing – and coupled with the volume of records that the government will doubtless produce and the overriding need for in-person trial preparation with the client – it will be virtually impossible to mount an effective trial defense through intermittent telephone calls and truncated, sparse jail visits.

The federal courts warn that pretrial detention can hamstring trial preparation:

> The Supreme Court has recognized that "to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during trial itself." *Maine v. Molton*, 474 U.S. 159, 170, 106 S. Ct. 477 (1985); see also Wolfish v. Levi, 573 F.2d 118, 133 (2d Cir.1978) ("[O]ne of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to assist in his own defense."), *rev'd on other grounds, Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861 (1979).

*Estrada v. Munoz*, No. 2010 WL 1999525, at *2 (C.D. Cal. May 17, 2010).

Moreover, with Mr. Smirnov in custody he will not be able to facilitate his counsel's contact with critical witnesses, and assist counsel with language barriers that are sure to exist. In *Kinney v. Lenon*, 425 F.2d 209 (9th Cir. 1970), the Ninth Circuit found the detention of a juvenile to interfere with his due process right to a fair trial, as the Defendant was likely the only person that witnesses would cooperate with due to "age and race." Here, with the cultural and language barriers, it is anticipated that Mr. Smirnov will be the only person that can effectively contact and facilitate interviews of critical witnesses for his defense.

Keeping Mr. Smirnov in custody will thus work an irreparable harm to his ability – indeed, *right* – to prepare effectively for trial.

**F.    Mr. Smirnov is Neither a Flight Risk Nor a Danger to the Community:**

Federal courts embrace the "strong presumption against detention." *See, e.g., United States v. Hanson*, 613 F. Supp. 2d 85, 87 (D.C. 2009); *United States v. Karni*, 298 F. Supp. 2d 129 (D.C. 2004).

In both *Hanson* and *Karni*, the courts held that conditions for release could be fashioned to ensure the appearance of defendants who – unlike the Mr. Smirnov – did *not* have significant ties to the United States and who *did* pose a serious danger to the United States. There, the defendant was an Israeli national who had been residing in South Africa for the last eighteen years. He was charged with violating federal law by allegedly acquiring "products that are

capable of triggering nuclear weapons and [exporting] them to Pakistan, via South Africa, avoiding the requirement of obtaining an export license for the devices." *Karni*, 298 F. Supp. 2d at 130. Despite the serious nature of his crime and the fact that he "had no ties to the United States or to the Washington, D.C. area," the court determined that the defendant should be released subject to certain conditions including release into third party custody, home detention, and electronic monitoring.

In *Hanson*, the defendant was a Chinese citizen who had become a naturalized citizen of the United States.  She was alleged to have illegally exported unmanned aerial vehicle ("UAV") autopilot components to the People's Republic of China. According to the government, Mrs. Hanson carried these UAV components to Germany and handed them to an acquaintance who took them to China. The government represented that these sophisticated components enable UAVs to perform certain tasks without the aid of human pilots, including autonomous take offs, bungee launches, and hand launches and landings, and that they have other tactical military uses. Moreover, according to the government's expert, UAVs equipped with these components could be used to simulate stealth planes and cruise missiles to test air defense detection systems, and potentially could be armed. The government argued that she was a tremendous flight risk because 1) she had closer ties to China than to the United States; 2) her marital relationship in the United States was faltering, and she had no other family ties here; 3) she faced a steep jail sentence and the government had strong evidence against her; 4) it would have been easy for her to get a new Chinese passport and depart to China; 5) and she had strong business interests, family ties, and property in China. After hearing the evidence, the court found that conditions could be fashioned that would reasonably assure the defendant's presence at trial.

These cases (and countless others like them) illustrate the type of conditions that can easily be fashioned to ensure that Mr. Smirnov attends all Court hearings and ensure the safety of the community.

Again, it should also be noted that Mr. Smirnov is dual-citizen who is lawfully in the United States. His dual citizenship should not be a concern for this Honorable Court, and Pretrial Services has recognized that conditions can be fashioned regarding the factor of alleged flight.

**G.    CONCLUSION:**

In light of the foregoing, Mr. Smirnov offers the following bail proposal:

- •    A personal recognizance signature bond;

- •    Supervision with the United States Pretrial Services' office in both the District of Nevada (where he is a resident) and the Central District of California (where the instant case is pending), to include electronic monitoring, maintaining his current residence,  and no travel except as ordered to appear in the Central District of California;

- •    Surrender of his Israeli passport (the Government already has possession of his United States passport);

- •    Compliance with any other conditions, orders or admonishments imposed by this Court, by the District Court in the Central District of California, or by any Pretrial Services Officer of either Court.

Because the government cannot prove by a preponderance of the evidence that Mr. Smirnov poses a risk of non-appearance, much less clear and convincing evidence of any

1   "danger," this Court should, as recommended by Pretrial Services, order him released on

2   conditions.

3           DATED this 19th day of February, 2024.

4

5                                           Respectfully Submitted:

6                                           CHESNOFF & SCHONFELD

7

8                                               /s/        David Z. Chesnoff
                                            DAVID Z. CHESNOFF, ESQ.
9                                           Nevada Bar No. 2292
                                            RICHARD A. SCHONFELD, ESQ.
10                                          Nevada Bar No. 6815
                                            520 South Fourth Street
11                                          Las Vegas, Nevada 89101
                                            Telephone: (702)384-5563
12                                          rschonfeld@cslawoffice.net
                                            dzchesnoff@cslawoffice.net
13                                          Attorneys for Defendant
                                            ALEXANDER SMIRNOV
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

1

2

## **CERTIFICATE OF SERVICE**

3

    I hereby certify that on this 19th day of February, 2024, I caused the forgoing document

4

to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and

5

served on counsel of record via the Court's CM/ECF system.

6

7

8

                /s/ Rosemary Reyes
          Employee of Chesnoff & Schonfeld

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28